MAR 0 1 2013

CLERK
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Comeaux                                                         Civil Action 10-0889

versus                                                          Judge Richard T. Haik, Sr.

United States of America                                        Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by plaintiff, Mark C. Comeaux, against defendant, the United States of America (hereinafter referred to as the "IRS" or the "government") [Rec. Doc. 41], defendant's Response in Opposition. [Rec. Doc. 52], and plaintiff's Reply thereto [Rec. Doc. 53]. For the reasons that follow, plaintiff's motion will be granted.

### *I. Background*

On July 27, 2009, the IRS assessed Comeaux as a responsible person of the Companies, "who willfully failed to truthfully account for, collect for and pay over to the United States the taxes withheld from employees." *R. 52*. The IRS contends that the amounts assessed represent income and employment taxes that were required to be withheld from the wages of the employees of Behavioral Hospital of Baton Rouge, L.L.C. ("BHBR"), Behavioral Hospital of Lutcher, L.L.C. ("BHL"), Behavioral Hospital of Shreveport, L.L.C. ("BHS"), Continuum Health Care Management, L.L.C. ("CHM"), and St. Luke's Rehabilitation Hospital of Shreveport, L.L.C. ("St. Luke"), ("the Companies"), during the taxable periods ending March 31, 2006 through June 30, 2007. *R. 1*.

On June 3, 2010, plaintiff, Mark C. Comeaux, filed this action for refund and abatement against the United States, seeking a refund of $10,489.00 he paid on account of trust fund recovery penalties assessed and collected by the Internal Revenue Service ("IRS") under 26 U.S.C. § 6672. In his Complaint, Comeaux alleges that as of July 27, 2009, he paid

to the IRS, with full reservation of rights, the amount of $10,489. Comeaux alleges that he is not a responsible officer of any of the Companies, that the trust fund penalties at issue have been erroneously assessed against him and that he should receive a refund of monies paid by or collected from him on account of the assessments. *Id.* Comeaux alleges that Gary L. Cain, was designated as the "tax matters partner" who was "responsible for collecting, accounting for and paying the withholding tax liability of the entities." *Id. at ¶¶ 13-26.*

On August 17, 2010, in response to Comeaux's Complaint, the IRS filed an Answer and Counterclaim against him seeking to collect unpaid assessments of federal employment and income taxes he allegedly withheld from employees of the Companies and refused and/or neglected to pay, pursuant to § 6672, in the amount of $905,458.27, for the tax periods ending March 31, 2006 through June 30, 2007, plus accrued interest from the date of the assessments, less any payments or credits to which Comeaux would be entitled. *R. 7.*

On August 31, 2010, the IRS filed a Third Party Complaint against Cain for unpaid assessments of federal employment and income taxes he allegedly withheld from employees of the Companies and refused and/or neglected to pay, pursuant to 26 U.S.C. § 6672. *R. 8.* In "Count I" of the Third Party Complaint, the IRS alleged that Cain was jointly and severally liable with Comeaux for the amount of $905,458.27, less any payments or other credits, plus interest and statutory additions, for the tax periods ending March 31, 2006 through June 30, 2007, as alleged in the government's Counterclaim against Comeaux, attached as Exhibit B. *R. 8, ¶ 14, Exh. B.* The IRS further alleged that, in the event it was held liable to Comeaux in the amount of $10,489, or any part thereof, plus interest, Cain was in turn liable for that amount. *Id. at ¶ 15.* In "Count II" of the Third Party Complaint, the IRS sought to recover from Cain the amount of $1,697,459.53, plus interest and statutory additions, for the tax periods ending December 31, 2004 through June 30, 2007. *Id. at ¶ 16.*

On January 23, 2012, the government filed a Motion for Default Judgment asserting that Cain had failed to file responsive pleadings or otherwise defend the action served on him over a year earlier. *R. 36*. The government further asserted that "Cain was a person required to collect truthfully account for, or pay over the Untied States the income and employment taxes from the employees of BHBR, BHL, BHS, CHM, and St. Luke for the tax periods ending March 31, 2006 through June 30, 2007." *Id. at p. 3*. The Court entered Judgment granting the United States' Motion for Default Judgment against Cain on March 19, 2012. *R. 39*.

## *II. Summary Judgment Standard*

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir.1989)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477

U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50 (citations omitted).

### *III. Law and Analysis*

#### *1. Payroll taxes and "responsible persons"*

The Internal Revenue Code requires employers to withhold from employees' wages federal income taxes and social security contributions. 26 U.S.C. §§ 3102 and 3402. The employer holds these funds "in trust" for the United States. 26 U.S.C. § 7501(a). When a corporate employer fails to pay over the trust funds, § 6672(a) of the Code imposes a penalty equal to the entire amount of the unpaid taxes on "any person" required to collect, account for, or pay over the withheld taxes, who "willfully" fails to do so. Liability for the penalty is established if a person is a "responsible person" who "willfully" failed to pay over the withheld taxes. *Barnett v. I.R.S.*, 988 F.2d 1449, 1453 (5th Cir.1993).

The IRS seeks to hold Comeaux personally liable for unpaid income tax withholdings and FICA taxes of the Companies' pursuant to 26 U.S.C. § 6672, a statute imposing what is commonly referred to as the Trust Fund Recovery Penalty ("TFRP"). Section 6672 of the Internal Revenue Code ("IRC") provides, in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). The IRC defines a "person" to include "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

The TFRP provisions of section 6672 of the IRC are referred to as extending only to

"responsible persons" who "willfully" fail to discharge their responsibility. The IRC does not define who is responsible, but the Fifth Circuit has stated that "[t]he crucial inquiry is whether the person had the 'effective power' to pay the taxes-that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." *Barnett*, 988 F.2d at 1454.

Here, "[t]he crucial inquiry is whether a party such as [Comeaux], by virtue of his position in (or vis-a-vis) the company, could have had 'substantial' input into such decisions, had he wished to exert his authority." *Id. at 1455*. The Fifth Circuit has prescribed a series of factors to be considered in analyzing whether the target individual had the effective power the Court considers whether the person "(I) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks. No single factor is dispositive." *Id*. Thus, the factors can be divided into the following three groups: (1) those that identify the taxpayer's status within the corporation, (2) those that identify his involvement in the daily affairs of the corporation, and (3) those that identify his involvement in the financial affairs of the corporation. *See, Vinick v. U.S.*, 205 F.3d 1, (1st Cir. 2000)(citing *Barnett* at 1454.).

2. *Motion For Summary Judgment*

Comeaux filed this Motion for Summary Judgment moving the Court to find that he is not liable to the IRS "for any and all 26 U.S.C. § 6672 penalties assessed against him by the IRS; abating any and all 26 U.S.C. § 6672 penalties assessed against him by the IRS; refunding any and all taxes paid by Comeaux on account of any and all 26 U.S.C. § 6672 penalties assessed against him by the IRS; refunding to Comeaux any and all overpayments

of taxes or refunds applied by the IRS to any 26 U.S.C. § 6672 penalties assessed against him by the IRS; and cancelling any and all liens asserted by the IRS against Comeaux on account of any and all 26 U.S.C. § 6672 penalties assessed against him by the IRS." *R. 41*. Comeaux seeks, pursuant to 26 U.S.C. § 7422, (1) a refund of the divisible portion of the assessment which he paid to the IRS and (2) an abatement of any and all TFRPs assessed against him by the IRS. *Id.* In support of his motion, plaintiff cites the sworn "Affidavit of Mark C. Comeaux," *R. 41-3*, as well as the sworn "Affidavit of Debbie Thibodeaux," an employee of CHM in Lafayette, Louisiana and the administrative assistant to Comeaux, *R. 41-2* which provide as follows:

Comeaux began working in Lafayette, Louisiana as a salaried employee of Continuum Health Care Management, L.L.C. ("CHM") in March 2006. *Id. at ¶4*. CHM managed and operated several rehabilitation and psychiatric hospitals in Louisiana, including, BHBR, BHL, BHS, and/or St. Luke. *Id. at ¶5; Thibodeaux Aff at ¶5*. Comeaux, however, was not an employee of BHBR, BHL, BHS, and/or St. Luke. *Id. at ¶6*.

During his employment, Comeaux held various titles, including controller, CFO, or accountant, *Id. at ¶7*, however, his primary responsibility was billing Medicare, Medicaid, and/or private insurance. *Id. at ¶8; Thibodeaux Aff. at ¶23*. Comeaux held no entrepreneurial interest in the Companies; was not a member of the Companies; was not a manager of any of the Companies; and was neither an officer nor director of any of the Companies. *Id. at ¶¶20, 21; R. 1 at ¶¶ 30, 31, 32*.

Comeaux had no authority to make decisions regarding purchases, contracts, or loans. *Id. at ¶10*. Comeaux did not have the authority to sell the Companies' assets. *Id. at ¶11*. Comeaux prepared and submitted reports relating to cash balances and outstanding receivables to Mr. Cain in San Antonio. *Id. at ¶12; Thibodeaux Aff. at ¶28* Comeaux's

6

primary day-to-day responsibilities related to receivables. *Id. at ¶16.* Comeaux did not determine which bills to pay or to whom the funds of the Companies were disbursed. *Id. at ¶17; Thibodeaux Aff. at ¶26. See also,* Complaint for Refund and Abatement, *R. 1 at ¶36.* Comeaux was not authorized to use the Electronic Federal Tax Payment System to make Federal Tax Deposits or payments on behalf of the Companies. *Id. at ¶18; Aff. of Thibodeaux at ¶9; R. 1 at ¶28.* Comeaux did not sign or issue the subchapter-S election forms, stock certificates, income tax returns, and/or quarterly withholding tax form for or on behalf of any of the Companies. *Id. at ¶19; Thibodeaux Aff. at ¶10; R. 1 at ¶27.*

Comeaux was not responsible for preparing, reviewing, approving, or filing federal tax returns and/or deposits of any of the Companies. *R. 1 at ¶37; Id. at ¶22; Thibodeaux Aff. at ¶11.* He had no authority and/or control over employees of BHBR, BHL, BHS, and/or St. Luke. *Id. at ¶23; Thibodeaux Aff. at ¶19.* Comeaux did not have authority to control distributions of payroll to employees of the Companies. *Id. at ¶26; Thibodeaux Aff. at ¶12.* Comeaux could not issue payroll checks from CHM's Lafayette office because that office lacked check printing capabilities. *Id. at ¶27; Thibodeaux Aff. at ¶18.* Comeaux did not have the authority or ability to pay the payroll taxes relating to employees of the Companies. *Id. at ¶28; Thibodeaux Aff. at ¶12.* Comeaux did not determine the work schedule or pay rates for any of the Companies' employees. *Id. at ¶29.*

The person who oversaw and dominated the day-to-day operations and financial affairs of the Companies was. *Id. at ¶32.* Through Powerhouse, Cain controlled every detail of the Companies' day-to-day operations. *Id. at ¶33.* Cain signed checks on behalf of the Companies, as he was the person primarily authorized to issue checks on behalf of the Companies. *Id. at ¶34.* It was Cain (or his staff in San Antonio at his direction) that made the decisions relating to which creditors or vendors of the Companies were to be paid. *Id.*

7

*at ¶35, Thibodeaux Aff. at ¶27*. On a daily basis, Cain controlled the process by which funds were allocated to the creditors of the Companies because funds were to be distributed according to his instructions. *Id. at ¶36*. Cain was responsible for collecting accounting for, and paying the withholding tax liabilities of the Companies. *Id. at ¶37*.

On a few rare occasions, Comeaux fielded calls from vendors and creditors of the Companies, including the IRS, who had not received payment. *Aff. of Comeaux at ¶38; Aff. of Thibodeaux at ¶25*. Comeaux reported to Cain regarding the substance of those vendors' inquiries. *Aff. of Comeaux at ¶39; Aff. of Thibodeaux at ¶28*. Cain refused to speak with these vendors and creditors directly, and instructed Comeaux to field their calls on his behalf. (*Aff. of Comeaux at ¶40*. Despite his refusal to communicate with creditors and vendors, Cain ultimately made the decisions about which vendors and creditors were to be paid. *Aff. of Comeaux at ¶41; Aff. of Thibodeaux at ¶27*. On more than one occasion, Cain told Comeaux that he would handle all disbursements and for Comeaux to focus on collections including issues with Medicare and screening all vendor calls. *Aff. of Comeaux at ¶42*.

Comeaux had extremely limited authority to sign payroll checks on behalf of the Companies. *R. 1 at ¶33; Aff. of Comeaux at ¶43; Aff. of Thibodeaux at ¶14*. However, this authority was exercised infrequently and only in emergency situations upon express directive(s) from Cain, after such checks were printed in San Antonio, TX, and after Cain determined what amounts would be paid to which payees. *R. 1 at ¶33; Aff. of Comeaux at ¶44; Aff. of Thibodeaux at ¶¶15-16*. The very few incidents when Comeaux actually signed a check, in each case, involved Cain (or his staff in San Antonio) (I) making the determination as to the list of payees, (ii) printing the checks in San Antonio, and (iii) transmitting the actual printed checks to the Lafayette with instructions for Comeaux to sign the checks and disburse directly to the payees determined by Cain (or his staff in San Antonio). *R. 1 at ¶34; Aff. of Comeaux at ¶45; Aff. of Thibodeaux at ¶17*. Because the

Lafayette office from which he worked lacked any check printing capabilities, Comeaux could not have issued a check without Cain's authorization. *Aff. of Comeaux at ¶46; Aff. of Thibodeaux at ¶18.* All corporate checks came from Cain (or his staff) in San Antonio. *Aff. of Comeaux at ¶47; Aff. of Thibodeaux at ¶¶16-18.*

The IRS assessed Comeaux as follows ("Assessments"): (1) BHBR in the amount of $188,123.20 for the tax periods ending June 30, 2006, September 30, 2006, and December 31, 2006; (2) BHL in the amount of $224,627.55 for the tax periods ending June 30, 2006, September 30, 2006, December 31, 2006, and March 31, 2007; (3) BHS in the amount of $204,808.41 for the tax periods ending June 30, 2006, September 30, 2006, and December 31, 2006; (4) CHM in the amount of $57,301.21 for the tax periods ending March 31, 2006, June 30, 2006, September 30, 2006, and December 31, 2006; and (5) St. Luke in the amount of $305,352.79 for the tax periods ending March 31, 2006, June 30, 2006, September 30, 2006, December 31, 2006, March 31, 2007, and June 30, 2007. *Aff. of Comeaux at ¶64.*

In connection with the Assessments, the IRS filed a Notice of Federal Tax Lien against Comeaux for the TFRPs in connection with the Assessments. *R. 1 at ¶53; Answer at ¶53; Aff. of Comeaux at ¶65.* In accordance with applicable law and with full reservation of rights, Comeaux properly paid the tax for one employee for the Companies for each quarter in which the IRS asserts a TFRP. *R. 1. at ¶¶47-51; Aff. of Comeaux at ¶66.* As of July 27, 2009, the total amount of such tax paid by Comeaux, with full reservation of rights, on account of the alleged TFRPs was $10,489. *R. 1 at ¶52; Answer at ¶52; Aff. of Comeaux at ¶67.* Using Form 843, Comeaux requested a refund and abatement of Assessments. *R. 1. at ¶¶54, 56, 58, 60, and 62; Answer at ¶¶54 and 55-64 (admitting the allegations and averments contained in the Complaint at ¶¶54, 56, 58, 60, and 62); Aff. of Comeaux at ¶68.* However, the IRS disallowed Comeaux's request for refund and abatement of the

Assessments. *R. 1 at ¶¶55, 57, 59, 61, and 63; Answer at ¶55-64 (admitting the allegations and averments contained in the Complaint at ¶¶55, 57, 59, 61, and 63)* ; *Aff. of Comeaux at ¶69*. The IRS denied Comeaux's request for a refund in connection with his personal income taxes, and applied Comeaux's overpayment of $8,489 for the 2008 tax year to the Assessments. *Aff. of Comeaux at ¶70*. As of February 28, 2011, Comeaux has paid, with full reservation of rights, more than $18,978 on account of the Assessments. *Id.* at *¶71*.

Despite Comeaux's representations in his sworn affidavit, corroborated by the sworn affidavit of Debbie Thibodeaux, the IRS contends that "looking at the facts as presented by Comeaux, it is not clear as a matter of law that he did not have the 'effective power' to pay the taxes." *R. 52*. The IRS further contends that Comeaux's acts of being "an officer or manager," signing checks, hiring and firing employees and dealing with the IRS and "other creditors," indicate that Comeaux "*appears* to be a responsible officer of the Companies." *Id. (emphasis added)*. The IRS also contends that Comeaux's employment with "another company" that had tax problems before his employment with the Companies supports his willful action. *Id.* While the IRS asserts that Comeaux's motion should be denied because "material facts regarding Comeaux's role and authority within the Companies are disputed," it argues, in the alternative, that the motion should be denied because "the parties have not had an opportunity to conduct discovery ... [and] the United States cannot present all of the facts essential to justify its opposition...." *Id. at p. 6*.

The IRS's opposition contains the Declaration of Amanda Norris, trial attorney for the United States of Justice, Tax Division, and lead attorney in this case, as 75 pages of exhibits. *R. 52*. While Comeaux objects to the Declaration of Norris and the attached exhibits as incompetent summary judgment evidence because Norris' Declaration is not made by a witness with personal, first hand knowledge, the Court finds that even considering such

evidence, the government has failed to put forth any evidence to support its case against Comeaux.[1]

Initially, as to the IRS's allegation of tax problems related to another company by which Comeaux was employed, the IRS has provided absolutely no evidence to support such an allegation, and therefore, the Court will not consider the allegation. The IRS also asserts that Comeaux's actions of being an officer or manager, signing checks, hiring and firing employees, and dealing with creditors, including the IRS make him liable for the entirety of the Companies. The IRS attached 75 pages of exhibits to its opposition memorandum consisting of Collection Information Statement for Businesses ("IRS Statement") as to the income and expenses of four of the five Companies, CMH, BHL BHS and St. Luke; Frost National Bank signature cards for all of the Companies; 31 checks signed by Comeaux from accounts of all of the Companies; and an IRS Interview Report of William Logan. *R. 52, Exh. A-O.*

As to the IRS's contentions that the documents show Comeaux is an "officer or manager" of the Companies, each of the IRA Statements, identifies Comeaux only as a "Contact." *Id.* As to the Frost National Bank signature cards, Comeaux's signature for CHM, BHL and St. Luke indicates "CFO, while in the signature cards for BHBR and BHS he is indicated as "Member." Gary L. Cain is identified as "Member" on all of the Companies' signature cards.

Contrary to the Bank signature cards as well as the IRS's unsupported allegations, the Louisiana Secretary of State's corporate database, *www.sos.la.gov*, provides that Powerhouse Healthcare Management, LLC is the sole officer and member of BHBR, CHM, and BHL,

---

[1] The Court finds, however, that Exhibit "O," the purported Form 4180 of William Logan which is essentially illegible, does not qualify as competent evidence under Rule 56. The IRS could have obtained the Declaration of Logan, but did not.

11

Powerhouse Healthcare Management, LLC and Paul A. Emmer are the officers and members of BHS and Powerhouse Healthcare Management, LLC, Sentinel Management Group, LLC and William E. Logan, III are the officers and members of St. Luke's.[2] The Court's review of the Secretary of State's corporate database further indicates that Comeaux is not listed as a member or officer of any of the Companies. *Id.* Comeaux's and Thibodeaux's sworn affidavits confirm that Comeaux had no relationship with the Companies other than as an employee of CHM with the various nominal titles of "controller, CFO, or accountant." *R. 41-3, ¶¶ 5-8, 41-2, ¶¶ 3-5.* His affidavit further confirms that his primary responsibility was billing Medicare, Medicaid, and/or private insurance but that he occasionally interviewed job applicants for the CHM office in Lafayette only, which employed four to six employees. *Id.* "[T]he significant control test is not meant to ensnare those who have merely technical authority or titular designation." *Fiataruolo*, 8 F.3d 930, 939 (1st Cir. 1993); *see also, Barnett,* 988 F.2d at 1456 (citing *French v. United States*, 180 F.Supp. 773 (E.D.N.Y.1960) ( company official whose leadership or decision-making capacity was "nominal" was not a responsible person)

The IRS has submitted a total of thirty-one (31) checks which were signed by Comeaux on behalf of the Companies in support of its allegation that Comeaux's check signing authority "appears" to make him a responsible person such that he is jointly liable with Cain for $905,458.27.[3] *R. 52, Exh. A-O.* In his sworn affidavit, Comeaux stated that he had "extremely limited authority to sign payroll checks" and that he exercised this authority "infrequently and only in emergency situations upon express directive(s) from Mr.

---

[2] Mark Comeaux is the Agent for service for CHM, BHL, BHS and St. Luke's. *www.sos.la.gov.*

[3] It is axiomatic that a total of 31 checks written over a period of 15 months for five (5) Companies of any size is a notably small number.

Cain." *R. 41-3, ¶¶ 43, 44.* In those few instances, Comeaux represented that Cain or his staff in San Antonio provided him the list of payees, and printed and transmitted the checks from San Antonio to Lafayette, as the Lafayette office from which Comeaux worked lacked any check printing capabilities. *Id., ¶¶ 44-47.* The sworn affidavit of Debbie Thibodeaux, in her capacity as an employee in CHM's payroll and human resources department, corroborates Comeaux's representations as to his check writing authority. *R. 41-2, ¶¶ 14-18.*

Moreover, both Comeaux and Thibodeaux state that Comeaux had no authorization to use the Electronic Federal Tax Payment System to make Federal Tax Deposits, to sign or issue any subchapter-S documents or tax forms or to prepare or file federal tax returns. *R. 41-3, ¶¶ ; 41-2, ¶¶ 9-11.* Thibodeaux explicitly denied that Comeaux had control over tax or payroll distributions, explaining that all payroll and tax decisions, including payment decisions were made by Cain and/or his staff from San Antonio. *R. 41-2, ¶ 12, 41-3, ¶¶ 26, 28.*

Finally, the IRS's vague contentions that Comeaux's dealings with creditors, including the IRS, provide support for their position is also untenable. Comeaux represents in his sworn affidavit that on rare occasions he had to take calls from vendors and creditors of the Companies, including the IRS, who had not received payment because Cain refused to speak with them *R. 41-3, ¶¶ 38-40.* He also represents that Cain had instructed him, "he [Cain] would handle all disbursements" and Comeaux was "to focus on collections." *Id. at ¶42.* Comeaux's dealings with the IRS involved IRS agent, Brent D. Schouest's, investigation in late 2007 of whether Comeaux qualified as a "responsible person" for the Companies' outstanding tax liabilities. *Id. at ¶ 48.* Comeaux represents that at that time he provided Schouest with the emails attached to his Affidavit. *Id. at ¶¶ 49-55.*

Comeaux's representations that his responsibilities were primarily related to accounting and that he lacked any power to be considered a responsible person, are supported by the above referenced emails. *Id. at ¶¶ 49-55*. In a June 27, 2006 email from Cain to Comeaux and Thibodeaux, Cain wrote, "HOW CAN I MAKE PAYABLE DECISIONS THEN I DON'T HAVE THE INFORMATION FROM YOU? Mark [Comeaux] did not give me up to date bank information, reconciliations and Debbie you have not provided me an updated receivable list on Lutcher showing paid and future drops. One more day without the ability to make decisions on payable. Can't we find a way to avoid this. I need the money posted in Lutcher as well." *Id., at ¶51*. In several other emails sent to Comeaux, Cain directed that checks be "cut" and sent out, *Id. at ¶53*, and stated, "I personally sign the checks and currently make the check selections." *Id. at ¶55*. Finally, Cain wrote Comeaux, "I am working on the payables and cash position. I am ready to discuss receivables with you in order for me to finish. Gary." *Id. at ¶54*.

The IRS states that "this case *appears* to be a case about a CFO with a financial stake in the Companies who asserted his titles and authority in all situations, except those having to do with federal taxes." *R. 52, p. 2*. The IRS has not identified specific evidence in the record or the manner in which this evidence shows that disputes of material fact exist. In contrast, Comeaux has provided corroborated competent summary judgment evidence as to his responsibilities and the role he played in his employment with the Companies which is largely undisputed by the IRS. *R. 52-3, Statement of Contested Material Facts*. After considering the entirety of the record in analyzing Comeaux's actual authority or ability, in view of his status within the Companies, the Court finds that Comeaux did not have and could not have had "substantial" input to pay the taxes owed by the Companies.

### 3. *The IRS' Rule 56(d) Motion*

The IRS moves, in the alternative, for a Rule 56(d) continuance, seeking the same information attested to in the Affidavits of Comeaux and Thibodeaux. *R. 52-1, ¶ 4*. The IRS 56(d) motion is based on Norris' Declaration which states that discovery is expected to involve interrogatories, requests for production, request for admission and depositions of Comeaux, Cain, Thibodeaux and Logan. *Id.* Norris' Declaration further states that the requested discovery "will shed light on whether Comeaux is liable for the trust fund recovery penalties assessed against him." *Id.*

Rule 56(d) functions as a safe harbor to insure that summary judgment is not granted prematurely or improvidently. *See Union City Barge Line v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir.1987). Usually, it is invoked when the party opposing summary judgment claims that it has not had sufficient time for discovery, or that relevant facts are in the control of the party moving for summary judgment. *Id.* The IRS must establish three general requirements for a continuance of discovery: (I) requesting extended discovery prior to the court's ruling on summary judgment; (ii) put the trial court on notice that further discovery pertaining to the summary judgment motion is being sought; and (iii) demonstrating to the trial court specifically how the requested discovery pertains to the pending motion. Additionally, the non-movant must diligently pursue relevant discovery-the trial court need not aid non-movants who have occasioned their own predicament through sloth. *Hinojosa v. Johnson*, 277 Fed.Appx. 370, 375 (5th Cir. 2008) (quoting *Wichita Falls Office Associates v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992)).

The IRS has failed to show how the additional discovery it requests will defeat summary judgment. The record indicates that before assessing Comeaux with penalties the IRS interviewed Comeaux and Logan. While the IRS did not interview Thibodeaux, the

Court has fully considered her sworn affidavit. As to Cain, the record indicates that as of at least October 14, 2010, the IRS has been unable to locate Cain for service of process "despite diligent and repeated efforts to do so."[4] *R. 18.* With nothing more asserted than its vague conjecture that discovery will "shed light" on whether or not the IRS should have assessed Comeaux nearly $1 million in trust fund recovery penalties, the Court declines to grant this motion. It is also important to note that this lawsuit was filed almost three years ago, Comeaux answered the IRS' Counterclaim on September 7, 2010, however, the IRS never requested a Rule 26(f) conference nor pursued any discovery until three months after being served with this motion. *R. 10.* While the IRS states that the parties agreed to complete discovery by July 12, 2013, the IRS filed no supplemental memoranda providing the Court with the deposition of any witness corroborating its position. Comeaux contends, and the Court agrees, that the IRS has failed to pursue allegations against Comeaux with any vigor, and Rule 56(d) is not designed to correct such failures. *See Mendy v. Omni Bancshares, Inc.,* 2011 WL 2937160, at *2 (E.D.La. July 19, 2011) ("[A] Rule 56(d) motion may be denied if a party had the opportunity to conduct discovery but did not diligently pursue it." (citing *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991)); *see also Beattie v. Madison Cnty. Sch. Dist.,* 254 F.3d 595, 606 (5th Cir.2001) (affirming denial of continuance in part because the plaintiff had several months to take depositions and provided no adequate justification for her failure to do so).

*IV. Conclusion*

Based on the foregoing, the Court finds there exists no dispute as to the material facts in this case, and therefore, plaintiff's motion for summary judgment will be granted. The

---

[4] The Return of Summons issued to Gary L. Cain was left with "Rachel Reyna" on August 4, 2011. Thus, Cain was never personally served. *R. 26*

Court further finds that the IRS' request for relief under Rule 56(d) should be denied. Accordingly, the plaintiff, Mark C. Comeaux, is entitled to a refund of the divisible portion of the assessment which he paid to the IRS and an abatement of any and all TFRPs assessed against him by the IRS.

                                                                           */s/ Richard T. Haik*
                                                               Richard T. Haik, Sr.
                                                           United States District Judge